ASHBURN & MASON, P.C.
Jeffrey W. Robinson
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 276-4331
Fax: (907) 277-8235
E-mail: jeffrey@anchorlaw.com

Attorney for Plaintiffs Mark Lambert and Business Technology Solutions, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK LAMBERT and BUSINESS TECHNOLOGY SOLUTIONS, LLC<br><br>                Plaintiffs,<br><br>v.<br><br>POWERHOUSE GAMING, INC., TAB KING, INC., DYNAMIC GAME DEVELOPMENT, INC. and NATHAN FREELS<br><br>                Defendants. | Case No. 3:21-CV-00191-HRH<br><br>COMPLAINT and DEMAND FOR JURY TRIAL |

COMES NOW Plaintiffs Mark Lambert and Business Technology Solutions, LLC, by and through undersigned counsel, for its causes of action against Defendants Powerhouse Gaming, Inc., Tab King, Inc., Dynamic Game Development, Inc. and Nathan Freels, and allege as follows:

### Introduction

1. Plaintiffs Mark Lambert ("Lambert") and Business Technology Solutions, LLC ("BTS") sold their highly unique and proprietary technology to Defendants Powerhouse Gaming Inc. ("Powerhouse") and Tab King, Inc., ("Tab King") and Lambert agreed to

{12083-003-00709678;1}

work for Tab King pursuant to terms of an Asset Purchase and Sale Agreement ("PSA"), a Promissory Note for $2,400,000.00, Security Agreements and Guaranty Agreements, and an Employment Agreement.

2. Now, after Defendants repeatedly violated the express and implied terms of the parties' various agreements, Plaintiffs seek compensation for their losses, as described herein.

## Parties and Jurisdiction

3. Plaintiff Lambert is a resident of the State of Alaska.

4. Plaintiff BTS is a limited liability company incorporated and licensed to do business in the State of Alaska. BTS is currently in good standing.

5. Defendant Powerhouse is a corporation incorporated in the State of Nevada, wholly owned by Nathan Freels, and on information and belief, is currently in good standing. On information and belief, Mr. Freels has promised certain beneficial ownership rights in this entity to others.

6. Defendant Tab King is a corporation incorporated in the State of Nevada, wholly owned by Nathan Freels, and is licensed to do business as a foreign corporation in the State of Alaska.

7. Defendant Dynamic Game Development, Inc. ("Dynamic") is a corporation incorporated in the State of Nevada, wholly owned by Nathan Freels, and, on information and belief, is currently in good standing.

8. Defendant Nathan Freels ("Freels") is a resident of the State of California.

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 2 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 2 of 18

9. This Court has diversity jurisdiction over the parties to this action under 28 U.S.C. § 1332(a). No Defendant is a citizen of the same state as Plaintiffs and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claim occurred in Alaska, a substantial part of property that is the subject of the action is situated in the District of Alaska, and the operative provision of the PSA and related agreements between the Plaintiffs and Defendants subject this matter to the "laws of the State of Alaska" and require that any action be brought in Alaska.

## Facts Giving Rise to Complaint

## Plaintiff's Business and the Proprietary and Valuable Technology Developed by Lambert and BTS

11. Lambert is the sole owner of BTS and has operated BTS since March 11, 2011.

12. Lambert is also the creator of a highly unique and valuable point-of-sale system for bars, restaurants, bingo, and gaming halls.

13. Between 2011 and 2019, BTS, d/b/a "Tab King USA," developed, managed, and licensed the aforementioned point-of-sale system and associated propriety technology to customers nationwide, including Powerhouse.

14. In addition, Lambert also developed the "Tab King Rewards" system, which is licensed by non-profit fraternal and veterans' organizations to communicate with and reward their members.

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 3 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 3 of 18

15. On information and belief, Freels and his family members owned and managed a variety of gaming and entertainment services in the Lower 48.

16. In 2019, Freels approached Lambert seeking to purchase BTS's assets.

17. BTS's primary asset was the source code for the Tab King point-of-sale-system and the Tab King Rewards system. However, Powerhouse was also interested in acquiring the underlying management systems, BTS's current client subscriptions and associated accounts receivable, the Tab King website, phone number and domain name rights and related trademarks, the physical point of sale equipment inventory, transferable business licenses, and BTS's client and prospective client lists.

## Terms of the PSA

18. On November 26, 2019, BTS (as "Seller") and Powerhouse (as "Buyer") entered into a Purchase and Sale Agreement (the "PSA") for the purchase of BTS's assets, including the point of sale and Tab King Rewards systems. A true and correct copy of the PSA is attached to this Complaint as **Exhibit 1.**

19. Under the PSA, the Assets purchased included: BTS's source code and intellectual property rights in the Tab King point of sale system, underlying management systems, and all recurring revenue and client contracts; the BTS website and rights to the domain www.tabkingusa.com; BTS's rights to the Tab King USA name and related trademarks; BTS's current point of sale equipment inventory; BTS's current accounts receivable and other receivables outstanding as of the PSA closing; BTS's client and prospective client lists; BTS's phone number; and BTS's interests in any license of permit

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 4 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 4 of 18

related to the above mentioned assets, all collectively referred to as the "Assets." Exhibit 1 at Section I(a).

### Assignment of Powerhouse's Interests in Assets and Liabilities under the PSA to Tab King (the "Purchasing Entity")

20. Powerhouse and BTS agreed that, as soon as the PSA was executed, Powerhouse would assign its interest in all rights, duties, and interests in the assets and liabilities under the PSA to a new company, which was designated the "Purchasing Entity." Exhibit 1 at Recital E.

21. On or about November 7, 2019, Freels established Tab King, Inc., a Nevada corporation ("Tab King") as the "Purchasing Entity" under the PSA.

22. Furthermore, on or about November 26, 2019, BTS, Powerhouse, and Tab King entered into an Assignment and Assumption of Contracts and Liabilities Agreements ("Assignment") by which BTS assigned its recurring revenue and client contracts to Tab King and by which Tab King agreed to assume BTS' obligations and liabilities as set forth in Section 7 of the PSA. A true and correct copy of the Assignment is attached hereto as **Exhibit 2.**

23. The purchase price set for the Assets under the PSA was $2,900,000.00. Exhibit 1 at Section II(a)(i).

### The Seller-Financed $2.9 Million Purchase Price for Assets is Secured By a $2.4 Million Note, Guaranty Agreements, Security Agreements, and Offered in Consideration of Key, Material Terms of the PSA

24. Following a $500,000.00 down payment, Tab King executed a promissory note

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 5 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 5 of 18

for $2,400,000.00 million (the "Note") in favor of BTS. A true and correct copy of the Note is attached as **Exhibit 3.** Pursuant to the PSA and the Note, BTS and Tab King agreed to make 120 monthly payments on the Note in the amount of $22,008.07 per payment.

25. The Note was secured by a Security Agreement between BTS and Tab King ("Tab King Security Agreement") and a Security Agreement between BTS and Dynamic Game Development, Inc. ("Dynamic Security Agreement"). True and correct copies of the Tab King Security Agreement and the Dynamic Security Agreement are attached as **Exhibit 4** and **Exhibit 5** respectively.

26. Pursuant to the Tab King Security Agreement, the Dynamic Security Agreement, and the PSA, the Note was secured with the following terms:

 a. BTS held a first priority security interest in the Assets equivalent to the value of the outstanding Note balance. *See* Exhibit 1 at Section 4, 11(d); Exhibits 4 and 5 at Section 1.

 b. Tab King and Dynamic were obligated to ensure that the outstanding balance on the Note never exceeded the value of the Assets. *See* Exhibit 1 at Section 11(d).

 c. BTS is entitled to examine and inspect the Assets at any reasonable time. Exhibits 4 and 5 at Section 4.

 d. Tab King and Dynamic are not permitted to sell or transfer the Assets or any interest in the Assets without first obtaining permission from BTS. Exhibits 4 and 5 at Section 4.

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 6 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 6 of 18

27. The Note was also secured by three separate Guaranty Agreements executed by Freels, Powerhouse, and Dynamic. True and correct copies of the Freels Guaranty Agreement, the Powerhouse Guaranty Agreement, and the Dynamic Guaranty Agreement are attached as **Exhibits 6, 7**, and **8** respectively.

28. Pursuant to the Guaranty Agreements, Freels, Tab King, and Dynamic each unconditionally guaranteed the payment of all obligations and liabilities of Powerhouse, Freels, Dynamic, and Tab King to BTS and Lambert under and in connection with the obligations set forth in the PSA and the Note. *See* Exhibits 6 - 8 at Section 1.

29. Finally, in order to further secure the Note and BTS's retained security interest in the Assets, and as consideration for the PSA, the PSA also required:

   a. that BTS would be entitled to Tab King, Powerhouse, and Dynamic's federal tax returns and financial statements upon request. Exhibit 1 at Section 9(d);

   b. Tab King, Powerhouse, and Dynamic are required to maintain business insurance sufficient to cover the outstanding balance on the Note. Exhibit 1 at Section 9(b);

   c. Freels is required to ensure that Tab King maintains life insurance for Freels and names BTS as a beneficiary on Freels' policy. Exhibit 1 at Section 9(c);

   d. Tab King, Powerhouse, and Dynamic are not permitted to affect a change of control or management, defined as a change in any directors or officers or a change of ownership of more than 20% of the issued and outstanding equity interest in any of the corporations. Exhibit 1 at Section 2(a)(ii).

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 7 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 7 of 18

## Tab King Hires Lambert as CEO Based on His Unique Skills and Expertise, and Tab King and Lambert Enter an Employment Agreement

30. Because Lambert possesses unique skills, knowledge, and expertise in developing and maintaining the proprietary technology covered by the PSA, the parties also agreed that Tab King would hire Lambert as CEO.

31. On or about November 26, 2019, Lambert and Tab King executed an employment agreement ("Employment Agreement"). A true and correct copy of the employment agreement is attached as **Exhibit 9**.

32. Lambert's position as CEO of Tab King is a salaried position. Exhibit 9 at Section 2.

33. As CEO, Lambert possesses all customary management authority of a CEO, including the authority to enter into agreements and approve expenditures, as well as perform all other management decisions. Exhibit 9 at Section 1.

34. Lambert reports directly to the Tab King Board of Directors. Exhibit 9 at Section 1.

35. Tab King may have anywhere between one and five directors on its Board of Directors. In the event Tab King appoints more than one director, Lambert is entitled to a seat as director with full voting rights. Exhibit 9 at Section 11.

36. At the time of this filing, the Tab King Board is comprised of a single director, Nancy Lake ("Lake").

37. Under the Employment Agreement, Lambert is entitled to exercise certain

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 8 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 8 of 18

economic rights vesting over the course of his employment. Specifically, Lambert is entitled to a percentage of the fair market value of Tab King. Currently, he is already fully vested in 1% of the fair market value of Tab King, At the conclusion of five years employment, Lambert's vested interest in the fair market value of Tab King shall be 15%. Exhibit 9 at Section 3.

38. In the event Lambert's employment is terminated by the company without cause or terminated by Lambert with good reason,[1] Lambert shall be:

> a. entitled to severance pay in the amount of three times his base salary, or $375,000.00;
>
> b. entitled to continuing health benefits as provided under Section 10 of the Employment Agreement;
>
> c. entitled to full, 15% vested interest in the fair market value of Tab King;
>
> d. excused from non-compete and confidentiality provisions of Section 4 – 7 of the Employment Agreement. Exhibit 9 Section 10.

---

[1] The "Good Reason" clause referred to in the agreement is Lambert terminating employment with the Company for good reason, which is defined as "a material breach of this Agreement by Company, or demotion in title, responsibility, or duties, or decrease in compensation of Lambert[.]" Exhibit 9 at Section 10.

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 9 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 9 of 18

39. In the event that Tab King defaults on the Note, Lambert is excused from the non-compete and confidentiality provisions of Section 4 – 7 of the Employment Agreement and shall be fully and immediately vested in his full 15% vesting interest under the Employment Agreement. Exhibit 9 at Section 12.

**Lambert Faces Numerous Obstacles to the Successful Operation of Tab King**

40. Lambert began working for Tab King in Anchorage, Alaska on or about November 26, 2019. Lambert's office is located in Anchorage, Alaska, and as CEO of Tab King, Lambert managed a team of roughly fifteen people in the development, marketing, sale, and service of the Tab King products.

41. During the course of Lambert's employment with Tab King, Lake and Freels significantly mismanaged the entity.

42. This mismanagement has made it difficult, if not impossible, to operate Tab King as a successful, solvent, business.

43. To wit, Freels, either directly or through Lake, has directed Lambert to provide Powerhouse, Freels, or Lake with Tab King's source code.

44. When confronted with this request, Lambert, as CEO of Tab King and the Note-holder under the PSA, voiced several concerns. First, while the source code legally belongs to Tab King pursuant to the PSA, the Tab King Security Agreement clearly obligates Tab King to "keep the [source code] in Tab King's possession" and prohibits Tab King from selling or transfer the source code or any interest in the source code." *See,* Exhibit 4 at

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 10 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 10 of 18

Section 4. This would include a sale or transfer outside of Tab King to a different business entity, such as Powerhouse or Dynamic.

45. Further, there is no economic benefit to Tab King to give Freels or Lake access to the source code. The source code is already being utilized by Tab King, through Lambert and his Tab King software development team. In other words, Tab King already has access to and is utilizing the source code through the knowledge and skill of its CEO, Lambert. Disclosure of the source code to Freels or Lake does not further benefit Tab King.

46. In fact, disclosure of the source code to Freels or Lake poses actual harm to Tab King: Powerhouse is a competitor of Tab King and it would financially harm Tab King if Powerhouse received the source code without licensing or paying Tab King for it. Disclosure of the source code to Powerhouse or Dynamic without BTS or Lambert's approval would also result in a violation of the Security Agreement and trigger default under the PSA.

47. On information and belief, the only reason Lake or Freels desire possession of Tab King's source code is to provide it to Powerhouse or another competing entity owned by Freels to build competing products without obtaining the proper licensing (and paying for the licensing) from Tab King.

48. Lambert explained to Freels and Lake on multiple occasions that disclosure of the source code to Lake or Freels could financially harm Tab King, and could potentially violate the PSA and Security Agreements if the source code were further disseminated outside Tab King. Freels and Lake ignored these concerns. Lambert also articulated these

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 11 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 11 of 18

concerns to Lake in an email on June 15 and July 19, 2021. A true and correct copy of email correspondence between Lambert and Lake is attached as **Exhibit 10**.

49. On May 29, 2021, Lake directed Lambert to instruct the Tab King software development team to do outsourced development work for Powerhouse at cost.

50. There is no economic benefit to Tab King to provide such services to Powerhouse at cost: Powerhouse is a competitor of Tab King, and providing these services at cost results in financial harm to Tab King.

51. On information and belief, Freels also ordered Lake to order Tab King to provide Powerhouse with pricing discounts that would have cost Tab King over $360,000 a year.

52. These pricing discounts would make Tab King insolvent.

53. Freels informed Lambert that he intended these pricing discounts to increase the value of Powerhouse and that Freels was planning to sell both Powerhouse and Tab King in the near future.

54. These directives were clearly intended to increase the value of Powerhouse—a company that Mr. Lambert has no economic interest in—at the expense of Tab King.

55. Powerhouse has also failed to consistently pay Tab King for its products and services.

56. For example, in March 2021, Tab King was nearly insolvent and held less than $10,000 in cash reserves and had $118,872.78 in liabilities.

57. At that time, Powerhouse owed Tab King, Inc. $434,736.08 for services provided.

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 12 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 12 of 18

58. After Lambert's repeated warnings, pleas, and threats to initiate a default against Tab King, Powerhouse finally paid Tab King a portion of its outstanding balance.

59. While this last-minute cash infusion provided temporary relief, Tab King's cash flow issues quickly returned when Powerhouse again failed to pay Tab King's outstanding bills and invoices for services the following month. A true and correct copy of email correspondence between Lambert and Freels is attached as **Exhibit 11.**

60. By May 2021, Powerhouse's balance owing to Tab King, Inc. had risen to $611,844,52.

61. In August 2021, Lambert received notice from VirtuallySmart, one of Tab King's suppliers, regarding its $53,300.00 past due invoice and was again forced to demand Powerhouse make expedited payments to Tab King so that Tab King could satisfy its outstanding invoices. A copy of Lambert and Metcalf's email correspondence from August 10, 2021 is attached as **Exhibit 13.**

62. Powerhouse's failure to pay Tab King for the hundreds of thousands of dollars in ongoing products and services that it demands from Tab King has left Tab King in a perpetually precarious financial position because Tab King has insufficient cash flow and is consistently unable to timely pay its suppliers.

63. Freels' and Tab King's efforts, either directly or through Lake, to mismanage and devalue Tab King, have jeopardized the Assets that form the basis of Lambert's security interest for the outstanding balance on the Note, and have also harmed Lambert's economic interest in the fair market value of Tab King.

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 13 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 13 of 18

### Powerhouse, Dynamic and Tab King's Repeated Violations of the PSA Also Threaten the Security for Plaintiff's Outstanding Balance on the Note

64. In addition to Freels' efforts, through Lake, to mismanage and devalue Tab King, Freels, Powerhouse, Tab King, and Dynamic have also repeatedly jeopardized BTS's security interest on the Note and violated the terms of the parties' PSA and related security agreements:

    a. Under the PSA, BTS retains a first priority security interest against the Assets offered by Dynamic as security for the Note. On information and belief, the majority of Dynamic's Assets are encumbered by a lien or debt from Dynamic's supplier, PDS Gaming, that is equal or potentially even superior to BTS's interest. This conduct violates Section 11(d) of the PSA and the Dynamic Security Agreement. *See* Exhibit 1, Section 11(d) and Exhibit 5 at Section 1.

    b. In January or February 2020, Powerhouse appointed a new CFO, Martin Metcalfe. Metcalfe replaced Jackie Belau, Powerhouse Gaming's longtime Controller and functional CFO. This change in management constitutes a change in "any of the directors or officers of Powerhouse Gaming" under Section 2(ii) of the PSA.

    c. In March 2020, Metcalfe and Freels advised Lambert that Dynamic's liabilities were approximately $2.1 million. Given the existing known value of the Assets, this meant that the net value of the Assets securing the Note

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 14 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 14 of 18

were only around $200,000, far less than the outstanding balance on the Note. A copy of the Note amortization schedule is attached hereto as **Exhibit 12**.

d. On or about July 8, 2020, the State of North Dakota revoked Powerhouse's gaming license for four months. On information and belief, this suspension cost Powerhouse a significant amount of money in lost revenue. Powerhouse failed to notify Lambert that it "was not in good standing with any department or regulatory agency overseeing gaming during any period of time the Note is outstanding," as required by Section 9(a) of the PSA.

e. On information and belief, neither Dynamic nor Powerhouse, nor Tab King, hold the required business or life insurance (for Nathan Freels) in the amount of the outstanding balance of the Note.

f. Finally, and most recently, on July 20, 2021, Lambert and BTS made a formal request for tax returns as required under the PSA. Defendants ignored Plaintiffs' request and to date have failed to provide any financial documents.

## Causes of Action

### Count I: Breach of Contract

65. Plaintiffs incorporate and allege paragraphs 1 -64 herein.

66. As consideration under the PSA, and as security for the Note, Freels, Powerhouse, Tab King, and Dynamic were obligated to perform material terms as required under the PSA.

67. As described in this Complaint, Defendants have violated numerous provisions

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 15 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 15 of 18

of the PSA. To wit, Defendants have failed to ensure that the outstanding balance on the Note never exceeds the value of the Assets securing the Note; Defendants have failed to obtains sufficient business or life insurance for Tab King, Dynamic, or Freels; Defendants have failed to ensure that BTS's security interest in the Assets is a first priority, and that no other liens exist that are equal or superior to BTS's security interest; Defendants have failed to provide financial records or allow the Assets to be inspected by BTS; Defendants have failed to inform BTS of a change in management or ownership of Powerhouse; and Defendants have failed to advise BTS that Powerhouse's gaming license was suspended in the State of North Dakota.

68. Defendants' conduct is in breach of the PSA and triggers acceleration of balance of the Note, and all applicable remedies under the PSA, Guaranty, Security Agreements and the Employment Agreement.

### Count II: Breach of Covenant of Good Faith and Fair Dealing

69. Plaintiffs incorporate and allege paragraphs 1 – 68 herein.

70. Implied in every agreement, including the Employment Agreement, is a covenant of good faith and fair dealing.

71. Although Lambert does not hold an equity stake in Tab King and does not have any authority to control the management or ownership of Tab King, he holds a vesting economic interest in a percentage of the fair market value of Tab King pursuant to the Employment Agreement.

72. Lambert's economic interest in Tab King does not fully vest at 15% of the fair

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 16 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 16 of 18

market value until after five years of employment and is therefore contingent on the financial stability and success of Tab King.

73. On information and belief, Tab King and Freels have taken steps to devalue and mismanage Tab King to the benefit of Freels' other businesses such as Powerhouse, and to the detriment of Tab King.

74. Because of Lambert's vesting interest in the fair market value of Tab King after five years, any actions taken to the financial detriment of Tab King directly result in Lambert's financial detriment.

75. Freels and Tab King's conduct violates the covenant of good faith and fair dealing implied in the Employment Agreement, and entitles Lambert to damages and remedies under the Employment Agreement, and further triggers default under the PSA.

### Prayer for Relief

WHEREFORE, the Plaintiffs Lambert and BTS demand judgment in their favor and against Defendants as follows:

(a) Judgment in the amount to be determined at trial, including but not limited to the outstanding balance of the Note in the amount of $2,279,213.16, full severance under the Employment Agreement in the amount of $375,000.00; a fully vested 15% of the fair market value of Tab King, and interest to the maximum extent permitted under available law;

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 17 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 17 of 18

(b) An award of reasonable attorney's fees pursuant to Alaska Rule of Civil Procedure 82, AS 45.50.537, or other available law; and

(c) Any such other legal and equitable judgment and relief in Plaintiffs' favor as the Court deems just and proper.

RESPECTFULLY SUBMITTED this August 12, 2021, in Anchorage, Alaska.

ASHBURN & MASON, P.C.
Attorneys for Plaintiff

By: s/Jeffrey W. Robinson
Jeffrey W. Robinson
Alaska Bar No. 0805038

{12083-003-00709678;1}
COMPLAINT
*Lambert et al vs. Powerhouse Gaming Inc. et al.* No. 3:21-cv-00191-HRH
Page 18 of 18

Case 3:21-cv-00191-HRH   Document 1   Filed 08/12/21   Page 18 of 18